J. Robert Forshey
State Bar No. 07264200
Lynda L. Lankford
State Bar No. 11935020
Suzanne K. Rosen
State Bar No. 00798518
FORSHEY & PROSTOK LLP
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 CASES |
| WINNIE COMMUNITY HOSPITAL, L.L.C., | CASE NO. 12-46841-dml-11 |
| FRONTIER HEALTHCARE GROUP, L.L.C., | CASE NO. 12-46842-rfn-11 |
| DEBTORS. | JOINT ADMINISTRATION PENDING |
| | **Expedited Hearing Requested** |

### DEBTORS' MOTION FOR AN ORDER AUTHORIZING THE DEBTORS TO MAINTAIN EXISTING CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, CHECKS AND BUSINESS FORMS

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Winnie Community Hospital, L.L.C. ("Hospital") and Frontier Healthcare Group, L.L.C. ("Frontier", and with the Hospital, the "Debtors"), as debtors in possession, file this motion for entry of an order authorizing them to maintain existing cash management system, bank accounts, checks and business forms (the "Motion") and respectfully represent as follows:

### PRELIMINARY STATEMENT

1.   Prior to the commencement of these cases, as part of their ordinary business practices, the Debtors maintained a cash management system, which included the use of two Bank Accounts, established business forms and checks (the "Cash Management System"). The

continuation and maintenance of certain components of the Cash Management System without disruption is essential to protect patient care and welfare and to protect the Debtors' relationships with vendors, contract parties and employees. All parties-in-interest will benefit if Debtors are allowed to maintain their Cash Management System because it will preserve the integrity of the Debtors' financial relationships, reduce the impact of the Debtors' Chapter 11 filings on their workforce and allow for a smoother transition to operating in Chapter 11. Accordingly, the Debtors respectfully request that this Court authorize the continued use of certain components of the existing Cash Management System and grant them limited relief from Section VI of the Region 6 U.S. Trustee Guidelines.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. sections 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. section 157(b). Venue is proper before this Court pursuant to 28 U.S.C. sections 1408 and 1409.

## PROCEDURAL BACKGROUND

3.  On December 17, 2012 (the "Petition Date") the Debtors filed voluntary petitions for relief in this Court under chapter 11 of the Bankruptcy Code.

4.  The Debtors have filed a Motion for Joint Administration of their Chapter 11 cases.

5.  The Debtors continue to manage and operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6.  No creditors' committee has been appointed in these cases by the United States Trustee. Further, no trustee or examiner has been requested or appointed in the Debtors' chapter 11 cases.

## FACTUAL BACKGROUND

7.  The Hospital operates a twenty-five (25) bed Medicare certified Critical Access

Hospital and Rural Health Clinic in Winnie, Texas.  Frontier is the majority equity holder of the Hospital.  Both of the Debtors' business offices are located in Fort Worth, Texas.  Winnie is a small community located approximately twenty (20) miles southeast of Beaumont and approximately twenty-five (25) miles to the east of Baytown.  Located near the Gulf Coast, it is the only access to healthcare for persons living near the coast and around the Bolivar Peninsula.  For this community, the next closest hospital is more than thirty (30) miles away.

8.   The Hospital provides healthcare to an estimated population of 40,000 in a medically underserved area which includes Chambers, West Jefferson, Liberty and Galveston counties.  The Hospital provides a wide range of healthcare services, including twenty-four (24) hour emergency care, in-patient care and various out-patient services.  Laboratory, radiology and pharmaceutical services are also provided, as well as many specialty services including pediatrics, family practice, cardiology, physical therapy and ophthalmology.

9.   Behind the local school district, the Hospital is the second largest employer in the community.  The financial profile of the Hospital is set forth below:

- Annual gross revenue – $15.0 million
- Annual gross payroll – $3.66 million
- Annual net payroll – $2.864 million
- Full Time Equivalents ("FTEs") - 63
- Employee positions/Mid-level practitioners – 10
- Emergency room visits – 2,513
- Annual in-patient service days - 1,614
- Annual out-patient visits – 2,583
- Annual out-patient clinic visits – 17,694

10.  The Hospital is fortunate to not only have the support of the community and its residents, but also the support of two local organizations that were recently created to help

support the Hospital financially. The Winnie Coastal Medical Foundation (the "Foundation") is a non-profit organization led by key community leaders, and which was created to support the efficient delivery of healthcare services in the region. Winnie-Stowell Hospital District (the "Hospital District") is a sales tax based governmental entity that was also created to help ensure the availability of healthcare services to both indigent patients and all other constituents served by the Hospital.

11. This support is crucial because the Hospital, as part of its service to the community, is required to accept and treat patients through its emergency room regardless of any patient's ability to pay. Consequently, because the Hospital is required to serve the community without regard to ability of patients to actually pay for the services, community support by both the Foundation and Hospital District is essential to the continued success of the Hospital and the performance of its mission in the community.

12. The Hospital, the Winnie-Stowell EMS and the Arboretum Nursing Home are currently the only available healthcare entities in the community. The existence and success of the Hospital is crucial not only to the people of the community but also to the other two healthcare entities because the next closest hospital is more than thirty (30) miles away. The Arboretum Nursing Home is a one hundred (100) bed facility treating primarily Medicare patients that are often in need of immediate medical attention. They depend on the Hospital to provide both initial emergency and primary care for this aged portion of the community. If the Hospital were to cease operations, the Winnie-Stowell EMS would have to travel more than thirty (30) miles out of the area to transport patients which, during its absence, would leave the community effectively without any emergency services. Studies have shown that the first fifteen (15) minutes are crucial to a person's survival or quality of life in an emergency situation such as cardiac arrest or other life threatening injuries. As mentioned above, as to the people residing in the beach community on the Bolivar Peninsula, they would have to travel up to an hour to

Debtors' Motion for an Order Authorizing the Debtors to Maintain Existing
Cash Management System, Bank, Accounts, Checks and Business Forms

Page 4 of 11

receive healthcare other than from the Hospital.

13. In addition, as reflected above, the Hospital has ten (10) physicians and nurse practitioners. If the Hospital ceases to operate, the doctors and physician's assistants employed by, and practicing at, the Hospital would not have any physical facilities from which to provide healthcare services in the Winnie area. There are no other healthcare facilities within the Winnie community and, absent the operation of the Hospital, such practitioners would be forced to relocate in either Beaumont or Baytown. The net result would be that the Winnie community would lose its local base of healthcare providers simply because there are no facilities from which they could practice.

14. The Hospital is also an integral part of the economy of the area. The residents of Chambers County and the surrounding counties face significant challenges as an economically distressed region. According to the Chambers County Community Health Assessment conducted by the Texas Department of Health and Human Services, and an assessment summary provided by the Federal Emergency Management Agency in 2009, not only does Chambers County suffer from general economic hardship, but also reported a decline in the number of physicians, physician's assistants and registered nurses from 1998 to 2007 (per population). The area is still considered to be under recovery efforts from Hurricane Ike in 2009 and Hurricane Rita in 2005. Both storms caused significant damage to residences and businesses in the area. The Hospital suffered extensive damage and ceased operations for an extended period of time. This has been a substantial factor in the current financial situation, which is a classic example of a distressed area with increased needs for healthcare services having decreasing resources to pay for and provide these services.

## RELIEF REQUESTED

15. By this Motion, the Debtors seek authority pursuant to sections 105(a) and 363 of the Bankruptcy Code authorizing the continued use of certain components of the Debtors'

existing Cash Management System and grant them limited relief from Section VI of the Region 6 U.S. Trustee Guidelines.

### A. The Debtors' Bank Accounts

16. A list of the Debtors' current and proposed bank accounts and a description of their use is as follows:

    (a) <u>Texas First Bank, Winnie (the "Deposit Account")</u>. This account currently operates both as the Debtors' operating account and deposit account for direct deposits from the Debtors' Medicare payment provider, various insurers, including Blue Cross Blue Shield, and other direct deposit payors. The Debtors propose to maintain this account as a deposit account, and to periodically sweep receipts (less appropriate reserves for authorized disbursements) to the DIP Account (defined below). It would take several weeks and cause severe revenue disruption to change direct deposit authorizations from Debtors' Medicare and other medical payment providers.

    (b) <u>Texas Capital Bank, Fort Worth (the "Fort Worth Payroll Account")</u>. Prior to the Petition Date, this account served as the Debtors' payroll account for the Debtors' Fort Worth employees. The Debtors intend to close this account.

    (c) <u>Prosperity Bank, Dallas (the "DIP Account")</u>. The Debtors intend to open a debtor in possession account with Prosperity Bank, which has branches both in Dallas and Winnie to utilize as their primary operating account during these Chapter 11 cases. Except for appropriate reserves, the Debtors expect to sweep receipts in the Deposit Account to the DIP Account no less than once a week.

17. As provided above, the Debtors request authority to maintain the existing Deposit Account to receive deposits and to sweep receipts (less appropriate reserves for authorized disbursements) no less than once per week to the new DIP Account. The Debtors further request that the Court allow the Debtors a twenty-one (21) day transition period to begin making disbursements from the DIP Account. The Debtors will require approximately twenty-one (21) days to establish the DIP Account, to obtain new checks that are compatible with the Debtors' financial software system, and to transfer auto-draft instructions for their pharmaceutical vendor. During the transition period, the Debtors propose to continue using the Deposit Account as their primary operating account, including for the hospital payroll, and to continue using the Fort Worth Payroll Account for the Fort Worth employee payroll. The Debtors will instruct the banks

at which they maintain the Fort Worth Account and the Deposit Account to not clear any prepetition checks unless such prepetition payments have been authorized by the Bankruptcy Court.

### B. The Cash Management System

18. The Debtors maintain the Cash Management System, which allows the Debtors to conduct all banking and cash management activities in a manner designed to minimize costs, maintain adequate liquidity, ensure proper controls, and account for cash assets. To facilitate the smooth operation of this Cash Management System, the Debtors have utilized and maintained two Bank Accounts, standard checks and customary business forms. Prior to the Petition Date and in the ordinary course of business, the Debtors utilized a Cash Management System that is similar to cash management systems used by other major medical enterprises.

19. As noted above, a material disruption of the Cash Management System will strain relations with parties who are vital to the Debtors' businesses – *i.e.*, patients, insurance companies, government payors, vendors, suppliers, counter-parties to contracts and employees – and, thus, will adversely impact patient care and all parties-in-interest.[1] Accordingly, the Debtors request authority to continue certain components of their Cash Management System, including the use of their Fort Worth Payroll Account and Deposit Account for disbursements for a 21-day period, the continued use of the Deposit Account for receipts, and the continued use of existing checks and business forms, to avoid the disruption that would result from the Debtors having to create a new cash management system.

### BASIS FOR RELIEF

---

[1] Concurrent herewith, the Debtors have filed (a) a motion to authorize payment of prepetition wages, salaries and employee related costs and benefits, (b) a motion to pay prepetition claims to independent contractors that routinely work on staff at the Hospital, and (c) a motion to pay prepetition critical vendor claims for essential third-party medical services. The relief sought herein is inextricably interwoven with the relief sought in these three motions because continuation of the Cash Management System and Bank Accounts is necessary to enable the Debtors to make uninterrupted payments of accrued compensation and critical vendor obligations – a critical first step in the maintenance of the Debtors' workforce and revenue stream and in the preservation of the value of their businesses.

20. The Cash Management System is a key facet of the Debtors' ordinary course of business. The Debtors view the Cash Management System as an essential business practice. The Cash Management System provides significant benefits to the Debtors' operations, including *inter alia*, the ability to (i) efficiently control and ensure the maximum availability of corporate funds when necessary, (ii) reduce interest expense and other borrowing costs and administrative expenses by facilitating the movement of funds where needed, and (iii) develop more timely and accurate account balance information.

21. Forcing the Debtors to recreate its cash management system would increase the risk of disruption in patient care and welfare, cause confusion, disrupt payroll payments, and introduce inefficiency at a time when efficiency is most critical, and would place an additional strain on the Debtors' relationships with patients, customers and vendors. The Debtors' relationships in the regard must be maintained if the Debtors are to successfully reorganize.

22. Integrally related to the Cash Management System is the continued use of the Debtors' Bank Accounts, particularly during the first 21-days of these bankruptcy cases. The Debtors, their employees and their vendors would suffer great hardship if the Debtors were required to immediately substitute new bank accounts for the existing Bank Accounts. Substitution of the Bank Accounts would essentially render this Court's approval of the continuation of their Cash Management System, if granted, meaningless, and inevitably lead to the same delays, confusion and disruption of the Debtors' businesses that discontinuation of the cash management procedures would cause. Furthermore, because the Deposit Account is subject to strict use and monitoring by Medicare payors, any change in this account could prevent the timely deposit of Medicare funding. It would be disastrous to the Debtors' reorganization prospects to alter the timely deposits into this account. By preserving business continuity and avoiding the operational and administrative paralysis that closing the Bank Accounts and opening new ones would necessarily entail, all parties in interest will be best

served and the Debtors will benefit considerably.

23. As provided above, the Debtors propose to establish a DIP Account with a U.S. Trustee approved financial institution. After the first 21-day period, the Debtors propose to use the DIP Account as its operating account for disbursements. In so doing, the Debtors will meet the essential requirements of Section VI of the United States Trustee Chapter 11 Guidelines for Region 6. The Debtors will sweep deposits made to the Deposit Account and place those funds into the DIP Account no less than once per week, except for an amount necessary to cover any authorized outstanding checks drawn on the Deposit Account. After the 21-day transition period, all disbursements for operating costs, including payroll, will be disbursed through the DIP Account. This will ensure that the deposits and cash utilized by the Debtors will reside in an approved account with sufficient FDIC insurance limits.

24. Accordingly, the Debtors respectfully request that this Court waive certain of the requirements of the Trustee Guidelines for Region 6 and permit the Debtors to maintain their Cash Management System as described herein. The Debtors submit the relief requested herein is appropriate and well within the authority of this Court. The Debtors' request for authorization to continue the Cash Management System is entirely consistent with section 363(c)(1) of the Bankruptcy Code, which allows a debtor-in-possession to "use property of the estate in the ordinary course of business." See In re Charter Co., 778 F.2d 617, 621 (11th Cir. 1985). In complex Chapter 11 cases, courts have routinely waived the requirements of the UST Guidelines, recognizing that they are often impractical and potentially detrimental to a debtor's postpetition business operations and restructuring efforts. See, e.g., In re Southmark Corp., 49 F.3d 1111, 1114 (5th Cir. 1995) (stating that the cash management system allows the debtor "to administer more efficiently and effectively its financial operations and assets"). Indeed, the continued use of cash management systems similar to those maintained by the Debtors has been approved as a routine matter in unreported orders in a number of large and complex

chapter 11 cases in this district. See *In re Manchester, Inc., et al.*, Case No. 08-30703 (BJH) (Bankr. N.D. Tex. Feb. 17, 2008) [Docket No. 75]; and *In re Mirant Corporation, et al.*, Case No. 03-46590 (DML) (Bankr. N.D. Tex. July 16, 2003) [Docket No. 47].

25. The Debtors also seek a waiver of the requirement to immediately obtain and utilize new checks, stationery, and business forms bearing the designation "Debtor-in-Possession" and the case numbers of these chapter 11 cases. The Debtors intend to obtain new checks for the DIP Account within twenty-one (21) days after the Petition Date, and after such 21-day transition period, all of Debtors' checks shall bear the appropriate identification.

26. Similarly, the Debtors utilize numerous standard business forms, including, but not limited to, invoices, purchase orders, form contracts, and bills of lading. The Debtors request authority to simply use these existing pre-printed business forms, rather than obtain new business forms reflecting their status as debtors-in-possession and listing the case number under which these cases are being jointly administered. Substantial time and expense would be consumed if the Debtors were required to print new business forms and stationery merely to indicate "Debtor-in-Possession."

## LIMITED NOTICE

33. Notice of this Motion has been provided to (a) Coon Bayou Farm, LLC; (b) the Internal Revenue Service; (c) the office of the United States Trustee for the Northern District of Texas; (d) the holders of the twenty (20) largest unsecured claims against the Debtors; and (e) parties filing a notice of appearance herein; as all set forth below in the Certificate of Service. The Debtors submit that no other further notice need be provided.

## CONCLUSION

WHEREFORE, the Debtors respectfully request entry of an order substantially in the form of **Exhibit "A"** attached hereto granting (i) the relief requested herein and (ii) such other and further relief as is just and proper.

Dated: December 17, 2012

Respectfully submitted,

/s/ J. Robert Forshey
J. Robert Forshey
State Bar No. 07264200
Lynda L. Lankford
State Bar No. 11935020
Suzanne K. Rosen
State Bar No. 00798518
FORSHEY & PROSTOK, LLP
777 Main Street, Suite 1290
Fort Worth, Texas 76102
Phone: (817) 877-8855
Fax: (817) 877-4151

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon the parties listed on the attached service list via United States Mail, first class postage prepaid, or via ECF electronic Notice, if available, on December 17, 2012.

/s/ Lynda L. Lankford

L:\BFORSHEY\Frontier Healthcare Group (C11) #5586\Pleadings\Motion to Maintain Bank Accounts 12.17.12.docx

*Winnie Community Hospital*
*Frontier Healthcare Group*
*Service List*
*#5586*

Winnie Community Hospital, L.L.C.
Frontier Healthcare Group, L.L.C.
Albert B. Schwarzer
3221 Collinsworth St., Suite 200
Fort Worth, TX 76107

Office of the U.S. Trustee
1100 Commerce St., Room 976
Dallas, TX 75242-1011

Admiral Linen and Uniform Services
2030 Kipling
Houston, TX 77098

Air Gas-Gulf States Region
PO Box 676031
Dallas, TX 75267

Alere North America Inc.
PO Box 846153
Boston, MA 22846

Cardinal Health, Inc.
c/o Bank of America Lock Box 15898
Collections Center Dr.
Chicago, IL 60693

Dr. Grigoriy Rodonaia
2955 Harrison, Suite 200
Beaumont, TX 77702

Dr. Nedrana Boutte
1178 2nd St.
Winnie, TX 77665

Endeavor Healthcare
28 Hunters Point
New Brunsfels, TX 78132

Entergy
PO Box 8104
Baton Rouge, LA 70891-8104

Frontier Healthcare Group, Inc.
3901 W. Vickery Blvd., Suite 4
Fort Worth, TX 76107-5672

Healthland
Dept Ch 17945
Palatine, IL 60055-7945

Jesser and Farber, L.L.P.
One Financial Place
440 South LaSalle St., Suite 2950
Chicago, IL 60605-5018

Laboratory Corp of America
PO Box 12140
Burlington, NC 27216-2140

Med Force Inc.
6220 Westpark, Suite 220
Houston, TX 77057

O'Connell Robertson & Assoc.
811 Barton Springs Rd., Suite 900
Austin, TX 78704

Physician Sales & Services, Inc.
PO Box 846260
Dallas, TX 75284-6260

Relayhealth
PO Box 403421
Atlanta, GA 30384-3421

Roche Diagnostics Corp.
Mail Code 5021
PO Box 660367
Dallas, TX 75266-0367

Siemens Healthcare Diagnostics
PO Box 121102
Dallas, TX 75312-1102

Thompson Outpatient Clinic
538 Broadway
Winnie, TX 77665

Windstream
Attn: Edith Staton
1720 Galleria
Charlotte, NC 28270

Internal Revenue Service
MC 8420G
PO Box 145595
Cincinnati, OH 45250-5595

Internal Revenue Service
MC 5035DAL
1100 Commerce St.
Dallas, TX 75242-1198

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Office of the Attorney General
Main Justice Building, Room 5111
10th & Constitution Avenue, N.W.
Washington, DC 20530

Texas Attorney General
Texas State Dispursement Bldg.
PO Box 659791
San Antonio, TX 78224-9941

U.S. Attorney's Office
1100 Commerce St., 3rd Floor
Dallas TX 75242

U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

Coon Bayou Farms, LLC
4909 Crestwood Dr.
Little Rock, AR 72207

CIT Finance LLC
1 CIT Dr.
Livingston, NJ 07039

Sarah and Bryan Mayo
222 Lamont Ave.
San Antonio, TX 78209

Marjorie G. Scott Family Trust
PO Box 98
Tillar, AR 71670

Vernon W. Scott Revocable Trust
4909 Crestwood Dr.
Little Rock, AR 72207

Sumner Group
2121 Hampton Ave.
St. Louis, MO 63139-2904

Roxy Odom
11 Carriage Hills
San Antonio, TX 78257

Rural Health Advocates
4127 Hunters Hill Rd.
Norman, OK 73072

AT&T
PO Box 5001
Carol, TX 60197

Charter Business
PO Box 790261
St. Louis, MO 63179

Collinsworth Building Joint Venture
3221 Collinsworth St., Suite 100
Fort Worth, TX 76107

Datamax
PO Box 2222
St. Louis, MO 63102-2222

Duane Henry
17 Calle Cascabella
Santa Fe, NM 87508

Gunnar Erickson
9902 Crystal Court, Suite 107
Laredo, TX 78045-6379

Jackie Leonard
29729 S. Mellow Wind
San Antonio, TX 78015

Rosemary Mede
97 Highland Ave.
Warwick, RI 28860

# EXHIBIT "A"

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| IN RE: | ) CHAPTER 11 CASES |
| | ) |
| WINNIE COMMUNITY HOSPITAL, L.L.C., | ) CASE NO. 12-46841-dml-11 |
| FRONTIER HEALTHCARE GROUP, L.L.C., | ) CASE NO. 12-46842-rfn-11 |
| | ) |
| DEBTORS. | ) **Jointly Administered Under** |
| | ) **Case No. 12-46841-dml-11** |

**ORDER GRANTING DEBTORS' MOTION FOR AN ORDER AUTHORIZING
THE DEBTORS TO MAINTAIN EXISTING CASH MANAGEMENT SYSTEM,
<u>BANK ACCOUNTS, CHECKS AND BUSINESS FORMS</u>**

Came on for consideration the *Debtors' Motion for an Order Authorizing the Debtors' to Maintain Existing Cash Management System, Bank Accounts, Checks and Business Forms* [Docket No. ___] (the "<u>Motion</u>")[1] filed by Debtors Winnie Community Hospital, L.L.C. ("<u>Hospital</u>") and Frontier Healthcare Group, L.L.C. ("<u>Frontier</u>" and with the Hospital, the "<u>Debtors</u>"); and it appearing that the Court has jurisdiction over this matter; and it appearing that due notice of the Motion has been provided as set forth in the Motion, and that no other or further notice need be provided; and it appearing that venue is proper before this Court pursuant to 28 U.S.C. sections

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

**Order Granting Debtors' Motion For An Order Authorizing The Debtors to Maintain
Existing Cash Management System, Bank Accounts, Checks and Business Forms**     Page 1

1408 and 1409; and having reviewed the Motion and having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court, and after due deliberation and sufficient cause appearing therefor, the Court hereby finds that the Motion should be granted.

ACCORDINGLY, it is hereby ORDERED that:

1. The Motion is GRANTED.

2. The requirement imposed by the U.S. Trustee Guidelines for Region VI to close all existing bank accounts and open new debtor-in-possession accounts, maintain a specified number of bank accounts, and immediately print new checks with the "Debtor-in-possession" designation is hereby waived, and the Debtors are authorized to continue to utilize their Cash Management System as provided herein.

3. Within twenty-one (21) days of the date of this Order, the Debtors shall open a new debtor-in-possession account ("DIP Account") with an authorized institution and shall obtain check stock with the appropriate jointly administered case name, number and debtor-in-possession designation. Thereafter, the Debtors shall sweep deposits from the existing Deposit Account no less than once per week and shall move such funds into the DIP Account; provided that Debtors may retain a reserve in the Deposit Account sufficient to cover any authorized outstanding checks drawn on the Deposit Account.

4. Within twenty-one (21) days of the date of this Order, the Debtors shall cease writing checks on the Fort Worth Payroll Account; and shall thereafter as reasonably practicable, close the Fort Worth Payroll Account and move any remaining funds therein to the DIP Account.

5. Texas First Bank in Winnie, Texas, with respect to the Deposit Account, and Texas Capital Bank in Fort Worth, Texas, with respect to the Fort Worth Payroll Account, are

authorized and directed to continue to maintain, service and administer such accounts consistent with the terms of this Order.

6. This Court shall, and hereby does, retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

###End of Order###

L:\BFORSHEY\Frontier Healthcare Group (C11) #5586\Pleadings\Order Granting Motion to Maintain Accounts 12.17.12.docx