J. Robert Forshey
State Bar No. 07264200
Lynda L. Lankford
State Bar No. 11935020
Suzanne K. Rosen
State Bar No. 00798518
FORSHEY & PROSTOK LLP
777 Main St., Suite 1290
Ft. Worth, TX  76102
Telephone: (817) 877-8855
Facsimile:  (817) 877-4151

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| IN RE: ) | CHAPTER 11 CASE |
| ) | |
| WINNIE COMMUNITY HOSPITAL, L.L.C., ) | CASE NO. 12-46841-dml-11 |
| ) | |
| FRONTIER HEALTHCARE GROUP, L.L.C., ) | CASE NO. 12-46842-rfn-11 |
| ) | |
| DEBTORS. ) | JOINT ADMINISTRATION PENDING |
| ) | |
| ) | **Expedited Hearing Requested** |

### DEBTORS' MOTION FOR AN ORDER AUTHORIZING THE DEBTORS TO PAY PREPETITION WAGES, COMPENSATION AND EMPLOYEE BENEFITS

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Winnie Community Hospital, L.L.C. ("Hospital") and Frontier Healthcare Group, L.L.C. ("Frontier", and collectively with the Hospital, the "Debtors"), as debtors in possession, file this motion for entry of an order authorizing them to pay prepetition wages, compensation and employee benefits (the "Motion") and respectfully represent as follows:

### PRELIMINARY STATEMENT

1.  The continued loyalty of a debtor's employees is a necessary component of any successful reorganization.  Under the best of circumstances, the filing of a chapter 11 petition is a stressful and uncertain time for a debtor's employees, most of whom are not familiar with the

nuances that bankruptcy practitioners often take for granted. Such stress and uncertainty often cause poor employee morale at a time when the debtor needs its employees to be most loyal. Moreover, many employees live paycheck to paycheck and will suffer immediate adverse consequences if they fail to receive their full compensation.

2. Honoring the Prepetition Employee Obligations (defined below) will minimize the hardship that employees will certainly endure if payroll or benefits are interrupted and will provide comfort to employees that the reasonable expectations of compensation for services will be met. As such, the Debtors seek to continue paying the Prepetition Employee Obligations in the ordinary course and to direct the bank at which the Debtors maintain their employment-related accounts to receive, process, honor and pay all payroll and employee benefit related checks, drafts, wires, or automated clearing house transfers, provided sufficient funds are available to honor all such payments, without regard to when the applicable payroll check was issued.

3. The relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors. A failure by the Debtors to honor their prepetition obligations to their employees, including the payment of prepetition compensation and employee benefits, may result in the loss by the Debtors of their workforce at a time when they need it most. Consequently, it is essential to the Debtors' continued operations that the Debtors' employees receive assurance that they will receive all prepetition compensation and that there will be no interruption in the Debtors' employee benefits.

## JURISDICTION AND VENUE

4. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. Sections 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. Section 157(b). Venue is proper before this Court pursuant to 28 U.S.C. Sections 1408 and 1409.

**PROCEDURAL BACKGROUND**

5. On December 17, 2012 (the "Petition Date") the Debtors filed voluntary petitions for relief in this Court under chapter 11 of the Bankruptcy Code.

6. The Debtors have filed a Motion for Joint Administration of their Chapter 11 cases.

7. The Debtors continue to manage and operate their business as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

8. No creditors' committee has been appointed in this case by the United States Trustee. Further, no trustee or examiner has been requested or appointed in the Debtors' chapter 11 cases.

**FACTUAL BACKGROUND**

9. The Hospital operates a twenty-five (25) bed Medicare certified Critical Access Hospital and Rural Health Clinic in Winnie, Texas. Frontier is the majority equity holder of the Hospital. Both of the Debtors' business offices are located in Fort Worth, Texas. Winnie is a small community located approximately twenty (20) miles southeast of Beaumont and approximately twenty-five (25) miles to the east of Baytown. Located near the Gulf Coast, it is the only access to healthcare for persons living near the coast and around the Bolivar Peninsula. For this community, the next closest hospital is more than thirty (30) miles away.

10. The Hospital provides healthcare to an estimated population of 40,000 in a medically underserved area which includes Chambers, West Jefferson, Liberty and Galveston counties. The Hospital provides a wide range of healthcare services, including twenty-four (24) hour emergency care, in-patient care and various out-patient services. Laboratory, radiology and pharmaceutical services are also provided, as well as many specialty services including pediatrics, family practice, cardiology, physical therapy and ophthalmology.

11. Behind the local school district, the Hospital is the second largest employer in the

community. The financial profile of the Hospital is set forth below:

- Annual gross revenue – $15.0 million
- Annual gross payroll – $3.66 million
- Annual net payroll – $2.864 million
- Full Time Equivalents ("FTEs") - 63
- Employee positions/Mid-level practitioners – 10
- Emergency room visits – 2,513
- Annual in-patient service days - 1,614
- Annual out-patient visits – 2,583
- Annual out-patient clinic visits – 17,694

12. The Hospital is fortunate to not only have the support of the community and its residents, but also the support of two local organizations that were recently created to help support the Hospital financially. The Winnie Coastal Medical Foundation (the "Foundation") is a non-profit organization led by key community leaders, and which was created to support the efficient delivery of healthcare services in the region. Winnie-Stowell Hospital District (the "Hospital District") is a sales tax based governmental entity that was also created to help ensure the availability of healthcare services to both indigent patients and all other constituents served by the Hospital.

13. This support is crucial because the Hospital, as part of its service to the community, is required to accept and treat patients through its emergency room regardless of any patient's ability to pay. Consequently, because the Hospital is required to serve the community without regard to ability of patients to actually pay for the services, community support by both the Foundation and Hospital District is essential to the continued success of the Hospital and the performance of its mission in the community.

14. The Hospital, the Winnie-Stowell EMS and the Arboretum Nursing Home are

currently the only available healthcare entities in the community. The existence and success of the Hospital is crucial not only to the people of the community but also to the other two healthcare entities because the next closest hospital is more than thirty (30) miles away. The Arboretum Nursing Home is a one hundred (100) bed facility treating primarily Medicare patients that are often in need of immediate medical attention. They depend on the Hospital to provide both initial emergency and primary care for this aged portion of the community. If the Hospital were to cease operations, the Winnie-Stowell EMS would have to travel more than thirty (30) miles out of the area to transport patients which, during its absence, would leave the community effectively without any emergency services. Studies have shown that the first fifteen (15) minutes are crucial to a person's survival or quality of life in an emergency situation such as cardiac arrest or other life threatening injuries. As mentioned above, as to the people residing in the beach community on the Bolivar Peninsula, they would have to travel up to an hour to receive healthcare other than from the Hospital.

15. In addition, as reflected above, the Hospital has ten (10) physicians and nurse practitioners. If the Hospital ceases to operate, the doctors and physician's assistants employed by, and practicing at, the Hospital would not have any physical facilities from which to provide healthcare services in the Winnie area. There are no other healthcare facilities within the Winnie community and, absent the operation of the Hospital, such practitioners would be forced to relocate in either Beaumont or Baytown. The net result would be that the Winnie community would lose its local base of healthcare providers simply because there are no facilities from which they could practice.

16. The Hospital is also an integral part of the economy of the area. The residents of Chambers County and the surrounding counties face significant challenges as an economically distressed region. According to the Chambers County Community Health Assessment conducted by the Texas Department of Health and Human Services, and an assessment

summary provided by the Federal Emergency Management Agency in 2009, not only does Chambers County suffer from general economic hardship, but also reported a decline in the number of physicians, physician's assistants and registered nurses from 1998 to 2007 (per population). The area is still considered to be under recovery efforts from Hurricane Ike in 2009 and Hurricane Rita in 2005. Both storms caused significant damage to residences and businesses in the area. The Hospital suffered extensive damage and ceased operations for an extended period of time. This has been a substantial factor in the current financial situation, which is a classic example of a distressed area with increased needs for healthcare services having decreasing resources to pay for and provide these services.

## RELIEF REQUESTED

17. By this Motion, the Debtors seek authority, pursuant to sections 105(a) and 507(a) of the Bankruptcy Code, to pay all outstanding Prepetition Employee Obligations, and to direct the bank at which the Debtors maintain their account used for such purpose to receive, process, honor and pay all checks, drafts, wires, or automated clearing house transfers issued or made on account of the Prepetition Employee Obligations, provided sufficient funds are available to honor all such payments, without regard to when the applicable check was issued. The Debtors also seek entry of any other orders necessary to grant the relief requested.

## THE DEBTORS' PREPETITION EMPLOYEE OBLIGATIONS

18. The Debtors[1] currently employ approximately 92 employees.[2] Nine (9) of the employees are paid on a salary basis and include, among others, a hospital administrator, a physician, a director of nursing, and an office administrator. The remaining employees are paid on an hourly basis, and include nurses, lab technicians, physician assistants, clerical staff,

---

[1] The employees are all actually employees of the Hospital, rather than Frontier. The reference here to the Debtors collectively is merely for convenience for purposes of the Debtors' first day motions.

[2] A number of the Debtors' employees are "PRN" and work on an "as needed" basis. Consequently, although the Debtor technically has a total of approximately 150 employees, there are usually only about 92 employees on every payroll.

dietary specialists and housekeeping staff.

19. As of the Petition Date, the Debtors owed to their employees certain prepetition obligations, including without limitation, the following: (a) amounts for wages, salaries, and other compensation; (b) accrued and unused sick leave pay and holiday pay; (c) maintenance of workers' compensation insurance; and, (d) other miscellaneous employee expenses, all as more particularly described below (collectively, the "Prepetition Employee Obligations").

A. **Wages, Salaries, and Business Expenses**

20. Salaried and hourly employees are paid on a semi-monthly basis on the 7th and 22nd of each month. The payroll on the 22nd of each month is for time accruing from the first through the fifteenth day of that particular month. The payroll on the 7th is for time accruing from the sixteenth through the end of the prior month. For example, for the pay period from December 1, 2012 through December 15, 2012, both salaried and hourly employees are paid for that pay period on December 22, 2012. For the pay period from December 16, 2012 through December 31, 2012, both salaried and hourly employees are paid for that pay period on January 7, 2013.

21. As of the Petition Date, the Debtors owed wages to their hourly employees for the December 22, 2012 payroll, which covers the pay period from December 1-15, 2012, of approximately $114,000, including taxes. Additionally, the Debtors owed wages to their salaried employees for the December 22, 2012 payroll of approximately $39,000, including taxes. In addition to the prepetition wages that will be included in the Debtors' December 22, 2012 Payroll (representing the December 1-15, 2012 pay period), the Debtors will also have prepetition wages in its January 7, 2013 Payroll (representing the December 16th through December 31st pay period). Specifically, the Debtors owed prepetition wages for December 16-17, 2012 in the approximate amount of $15,000 for hourly employees, and in the approximate amount of $7,000 for salaried employees, as of the Petition Date. None of the hourly and salaried employees are

owed in excess of $11,725 on account of prepetition wages and salaries.[3]

22. Moreover, as of the Petition Date, the Debtors owed estimated business expenses to their employees in the approximate amount of $4,250, primarily for mileage charges and other travel-related expenses.

23. The Debtors' request to pay Prepetition Employee Obligations includes a request to permit payroll checks from prior pay periods to continue to be presented and paid through the Debtors' payroll accounts. The Debtors are aware of seven (7) payroll checks from the prior pay period that had not yet cleared as of the morning of December 17, 2012, totaling approximately $6,500. To the extent these remain unpaid as of the time of filing, the Debtors request that the Court allow these checks to be honored post-petition.

24. Accordingly, the Debtors seek authority to pay all such wages, salaries, reimbursable business expenses, and any related payroll tax obligations to its hourly and salaried employees.

B. **Employee General Welfare Benefits**

25. As is common with most businesses, the Debtors provide their full-time employees with various general welfare benefits, such as vacation, holiday, personal leave, and sick day pay. These additional benefits are an integral and essential component of each employee's total compensation package. Temporary or permanent cessation of such additional benefits would drastically disrupt the overall morale of the employees and would hinder the Debtors' reorganization efforts. Consequently, the Debtors request authority to pay any prepetition amounts attributable to such benefits as and when such amounts become due.

26. Depending on the employee's tenure with the Debtors, certain of the Debtors' employees are permitted to take paid vacation. In addition to vacation pay, certain employees are entitled to sick leave pay, holiday pay, and other paid leave. Certain employees may have

---

[3] *See* 11 U.S.C. Section 507(a)(4).

accrued vacation and sick leave and other leave based upon work performed prepetition. By this Motion, the Debtors request authority to permit such employees to use any accrued paid vacation days, sick days, and other leave post-petition.

### C. **Miscellaneous**

27. The Debtors may determine that there are additional *de minimis* prepetition obligations, which have not been identified in the Motion, including, but not limited to reimbursement of employee business expenses incurred in the ordinary course, such as travel, meals, and lodging. Accordingly, the Debtors request authority to pay any such additional obligations up to an aggregate amount of $5,000 upon five (5) business days' prior written notice to counsel to any statutory creditors' committee and the United States Trustee, setting forth the nature and amount of the additional obligation sought to be paid.

28. If an objection is filed within such five-day period, and such objection is not resolved consensually, the Debtors will seek authority from the Court to make such payment. The Debtors reserve the right to seek authority from the Court to pay any obligations in excess of the aforementioned limit.

### **BASIS FOR RELIEF**

29. Section 507(a) of the Bankruptcy Code provides that the vast majority of Prepetition Employee Obligations, subject to certain conditions, are afforded priority distribution up to $11,725. *See* 11 U.S.C. Section 507(a)(4). Moreover, section 507(a)(4) priority claims are entitled to payment in full under a chapter 11 plan. *See* 11 U.S.C. Section 1129(a)(9)(B). Accordingly, because the majority of the Debtors' employees may be entitled to a priority distribution for prepetition amounts owed, the relief requested herein should primarily affect the timing of payment of employee claims rather than their treatment for distribution purposes, and should neither prejudice general unsecured creditors nor materially affect the Debtors' bankruptcy estate.

30. Under section 105(a) of the Bankruptcy Code, courts have permitted postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *In re Tusa-Expo Holdings, Inc.*, 2008 Bankr. LEXIS 2852, *6-11 (Bankr. N.D. Tex. 2008); *In re CoServ, L.L.C.*, 273 B.R. 487, 497 n. 17 (Bankr. N.D.Tex. 2002); see also, *In re Gulf Air, Inc.*, 112 B.R. 152 (Bankr. W.D.La. 1989).

31. The Debtors' employees are essential to a successful bankruptcy. Many of these individuals live from paycheck to paycheck, relying exclusively on receiving their full compensation to pay their daily living expenses. As a result, these individuals will be exposed to significant financial hardship if the Debtors are not permitted to honor the unpaid Prepetition Employee Obligations, likely impairing workforce morale and welfare at this critical time.

32. To give effect to the requested relief, the Debtors request that the Court provide specific authorization and direction to the bank at which the Debtors maintain their accounts used to pay the Prepetition Employee Obligations to receive, process, honor and pay all checks, drafts, wires, or automated clearing house transfers made on account of the Prepetition Employee Obligations, provided sufficient funds are available to honor all such payments, without regard to when the applicable check was issued.

33. The Debtors submit that the total amount to be paid for the benefit of their employees if the requested relief is granted is *de minimis* compared with the importance and necessity of the employees to the Debtors' continued operations. Accordingly, the relief sought herein is in the best interests of the Debtors' estates and creditors and will allow the Debtors to continue to operate their business with minimal disruption and proceed with the important task of stabilizing their operations.

## LIMITED NOTICE

34. Notice of this Motion has been provided to (a) Coon Bayou Farm, LLC; (b) the Internal Revenue Service; (c) the office of the United States Trustee for the Northern District of

Texas; (d) the holders of the twenty (20) largest unsecured claims against the Debtors; and (e) parties filing a notice of appearance herein; as all set forth below in the Certificate of Service. The Debtors submit that no other further notice need be provided.

## CONCLUSION

WHEREFORE, the Debtors respectfully request entry of an order substantially in the form of **Exhibit "A"** attached hereto granting (i) the relief requested herein and (ii) such other and further relief as is just and proper.

Dated: December 17, 2012

Respectfully submitted,

/s/ J. Robert Forshey
J. Robert Forshey
State Bar No. 07264200
Lynda L. Lankford
State Bar No. 11935020
Suzanne K. Rosen
State Bar No. 00798518
FORSHEY & PROSTOK, LLP
777 Main Street, Suite 1290
Fort Worth, Texas 76102
Phone: (817) 877-8855
Fax: (817) 877-4151

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon the parties listed on the attached service list via United States Mail, first class postage prepaid, or via ECF electronic Notice, if available, on December 17, 2012.

/s/ Suzanne K. Rosen

L:\BFORSHEY\Frontier Healthcare Group (C11) #5586\Pleadings\Motion for Authority to Pay Prepetition Employee Obligations 12 13 12.doc

*Winnie Community Hospital*
*Frontier Healthcare Group*
*Service List*
*#5586*

Winnie Community Hospital, L.L.C.
Frontier Healthcare Group, L.L.C.
Albert B. Schwarzer
3221 Collinsworth St., Suite 200
Fort Worth, TX 76107

Office of the U.S. Trustee
1100 Commerce St., Room 976
Dallas, TX 75242-1011

Admiral Linen and Uniform Services
2030 Kipling
Houston, TX 77098

Air Gas-Gulf States Region
PO Box 676031
Dallas, TX 75267

Alere North America Inc.
PO Box 846153
Boston, MA 22846

Cardinal Health, Inc.
c/o Bank of America Lock Box 15898
Collections Center Dr.
Chicago, IL 60693

Dr. Grigoriy Rodonaia
2955 Harrison, Suite 200
Beaumont, TX 77702

Dr. Nedrana Boutte
1178 2nd St.
Winnie, TX 77665

Endeavor Healthcare
28 Hunters Point
New Brunsfels, TX 78132

Entergy
PO Box 8104
Baton Rouge, LA 70891-8104

Frontier Healthcare Group, Inc.
3901 W. Vickery Blvd., Suite 4
Fort Worth, TX 76107-5672

Healthland
Dept Ch 17945
Palatine, IL 60055-7945

Jesser and Farber, L.L.P.
One Financial Place
440 South LaSalle St., Suite 2950
Chicago, IL 60605-5018

Laboratory Corp of America
PO Box 12140
Burlington, NC 27216-2140

Med Force Inc.
6220 Westpark, Suite 220
Houston, TX 77057

O'Connell Robertson & Assoc.
811 Barton Springs Rd., Suite 900
Austin, TX 78704

Physician Sales & Services, Inc.
PO Box 846260
Dallas, TX 75284-6260

Relayhealth
PO Box 403421
Atlanta, GA 30384-3421

Roche Diagnostics Corp.
Mail Code 5021
PO Box 660367
Dallas, TX 75266-0367

Siemens Healthcare Diagnostics
PO Box 121102
Dallas, TX 75312-1102

Thompson Outpatient Clinic
538 Broadway
Winnie, TX 77665

Windstream
Attn: Edith Staton
1720 Galleria
Charlotte, NC 28270

Internal Revenue Service
MC 8420G
PO Box 145595
Cincinnati, OH 45250-5595

Internal Revenue Service
MC 5035DAL
1100 Commerce St.
Dallas, TX 75242-1198

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Office of the Attorney General
Main Justice Building, Room 5111
10th & Constitution Avenue, N.W.
Washington, DC 20530

Texas Attorney General
Texas State Dispursement Bldg.
PO Box 659791
San Antonio, TX 78224-9941

U.S. Attorney's Office
1100 Commerce St., 3rd Floor
Dallas TX 75242

U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

Coon Bayou Farms, LLC
4909 Crestwood Dr.
Little Rock, AR 72207

CIT Finance LLC
1 CIT Dr.
Livingston, NJ 07039

Sarah and Bryan Mayo
222 Lamont Ave.
San Antonio, TX 78209

Marjorie G. Scott Family Trust
PO Box 98
Tillar, AR 71670

Vernon W. Scott Revocable Trust
4909 Crestwood Dr.
Little Rock, AR 72207

Sumner Group
2121 Hampton Ave.
St. Louis, MO 63139-2904

Roxy Odom
11 Carriage Hills
San Antonio, TX 78257

Rural Health Advocates
4127 Hunters Hill Rd.
Norman, OK 73072

AT&T
PO Box 5001
Carol, TX 60197

Charter Business
PO Box 790261
St. Louis, MO 63179

Collinsworth Building Joint Venture
3221 Collinsworth St., Suite 100
Fort Worth, TX 76107

Datamax
PO Box 2222
St. Louis, MO 63102-2222

Duane Henry
17 Calle Cascabella
Santa Fe, NM 87508

Gunnar Erickson
9902 Crystal Court, Suite 107
Laredo, TX 78045-6379

Jackie Leonard
29729 S. Mellow Wind
San Antonio, TX 78015

Rosemary Mede
97 Highland Ave.
Warwick, RI 28860

# EXHIBIT "A"

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 CASES |
| | ) | |
| WINNIE COMMUNITY HOSPITAL, L.L.C., | ) | CASE NO. 12-46841-dml-11 |
| FRONTIER HEALTHCARE GROUP, L.L.C., | ) | CASE NO. 12-46842-dml-11 |
| | ) | |
| DEBTORS. | ) | **Jointly Administered Under** |
| | ) | **Case No. 12-46841-dml-11** |

**ORDER GRANTING DEBTORS' MOTION FOR AN ORDER AUTHORIZING THE DEBTORS TO PAY PREPETITION WAGES, COMPENSATION AND EMPLOYEE BENEFITS**

Came on for consideration the *Debtors' Motion for an Order Authorizing the Debtors to Pay Prepetition Wages, Compensation and Employee Benefits* [Docket No. ___] (the "Motion")[1] filed by Debtors Winnie Community Hospital, L.L.C. ("Hospital") and Frontier Healthcare Group, L.L.C. ("Frontier" and with the Hospital, the "Debtors"); and it appearing that the Court has jurisdiction over this matter; and it appearing that due notice of the Motion has been provided as set forth in the Motion, and that no other or further notice need be provided; and it appearing that venue is proper before this Court pursuant to 28 U.S.C. Sections 1408 and 1409; and

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

**Order Granting Debtors' Motion For An Order Authorizing the Debtors
to Pay Prepetition Wages, Compensation and Employee Benefits**     **Page 1**

having reviewed the Motion and having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court, and after due deliberation and sufficient cause appearing therefor, the Court hereby finds that the Motion should be granted.

Accordingly, it is hereby ORDERED that:

1. The Motion is GRANTED;

2. The Debtors are authorized, but are not directed, to pay or otherwise honor the Prepetition Employee Obligations as provided in the Motion;

3. The banks and financial institutions upon which any checks are drawn or electronic transfers are made in payment of the obligations authorized herein, either before, on or after the Petition Date, including any payroll checks for pay periods prior to the Petition Date, are hereby authorized and director to honor, upon presentation, any such checks or transfers, provided that sufficient funds are available in the applicable accounts to make such payments;

4. The Banks shall be entitled to rely on the Debtors' express instructions to the Banks regarding which of the amounts referenced in the preceding paragraph have been authorized by the Court to be paid, and no liability shall be imposed on the banks as a consequence of such reliance;

5. Any third party receiving payment from the Debtors is authorized and directed to rely upon the representations of the Debtors as to which payments are authorized by this Order;

6. All payments authorized pursuant to this Order shall be made pursuant to, and in compliance with, the terms of any cash collateral or debtor-in-possession financing order of this Court;

7. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion;

8. Nothing in this Order shall prejudice the Debtors' right to seek additional and

further relief from this Court concerning Prepetition Employee Obligations, or limit the Debtors' right to make ordinary course of business changes, in the exercise of its business judgment, concerning any and all matters regarding employee compensation and benefits arising under their programs, plans, and policies, or the rights of any other party respect thereto;

9. Neither the Motion, the provisions of this Order, nor any payments made or not made by the Debtors pursuant to this Order, shall be deemed an assumption or rejection of any employee benefit plan, program or contract or otherwise affect the Debtors' rights under Section 365 of the Bankruptcy Code to assume or reject any executory contract between a Debtor and any employee;

10. Notwithstanding the relief granted herein or in any actions taken hereunder, nothing contained in this Order shall create any rights in favor of, or enhance the status of any claim held by, any employee. The authorizations granted herein are permissive and not obligatory, and the Debtors may, in the exercise of their discretion, determine whether or not to make any of the payments authorized hereunder; and

11. This Court shall, and hereby does, retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

###End of Order###


L:\BFORSHEY\Frontier Healthcare Group (C11) #5586\Pleadings\Order Granting Wage Motion 12.16.12.docx