J. Robert Forshey
State Bar No. 07264200
Lynda L. Lankford
State Bar No. 11935020
Suzanne K. Rosen
State Bar No. 00798518
FORSHEY & PROSTOK LLP
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 CASE |
| WINNIE COMMUNITY HOSPITAL, L.L.C., | CASE NO. 12-46841-dml-11 |
| FRONTIER HEALTHCARE GROUP, L.L.C., | CASE NO. 12-46842-rfn-11 |
| DEBTORS. | JOINT ADMINISTRATION PENDING |
| | **Expedited Hearing Requested** |

**DEBTORS' MOTION FOR AN ORDER AUTHORIZING PAYMENT OF
PREPETITION CLAIMS OF INDEPENDENT CONTRACTORS**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Winnie Community Hospital, L.L.C. ("Hospital") and Frontier Healthcare Group, L.L.C. ("Frontier", and collectively with the Hospital, the "Debtors"), as debtors in possession, file this motion for entry of an order authorizing them to pay all prepetition claims of independent contractors (the "Motion") and respectfully represent as follows:

**PRELIMINARY STATEMENT**

1. As discussed below, the Debtors in this case operate a hospital in a medically underserved area of Southeast Texas. While the continued loyalty of a debtor's workforce is a necessary component of any successful reorganization, it is particularly critical here as the

Debtors' hospital is the only source of healthcare in its community. It is critical to the Debtors' survival that the hospital be able to retain the services of their independent contractors, including most of the physician workforce, who, due to regulatory requirements, provide their medical services as independent contractors rather than as employees.

2. In the medical field, with limited exception, it is not possible for non-physicians to employ physicians as regular employees. As a result, it is commonplace for physicians to provide their services to medical facilities as independent contractors. Here, the Hospital utilizes the services of four (4) physicians, a pharmacist, a dietician, an activities director and a clinical supervisor (collectively, the "Individual Independent Contractors"), and a physician and physician's assistant pursuant to a Professional Services Agreement (the "PSA Independent Contractors"). In addition, Albert B. Schwarzer (the "Manager Independent Contractor", and collectively with the Individual Independent Contractors and the PSA Independent Contractors, the "Independent Contractors") manages the business of the hospital on behalf of Frontier pursuant to a Management Agreement between the Hospital and Frontier (the "Management Agreement"). Pursuant to the Management Agreement, the Hospital is obligated to a pay a management fee to Frontier, which in turn, is obligated to pay Mr. Schwarzer's salary and business expenses. For convenience, the Hospital has historically paid Mr. Schwarzer's salary and expenses directly as part of the management fee owed to Frontier.

3. These Independent Contractors are absolutely critical to the Debtors' continued operations. Indeed, without the additional staffing provided by the Independent Contractors, it would be impossible for the Debtors to continue to provide their current level of services. Consequently, the Debtors seek to pay all amounts owed to the Independent Contractors as of the Petition Date (the "Prepetition Independent Contractor Obligations")[1] to avoid any hardship

---

[1] This definition excludes obligations to Dr. Rodonaia and Dr. Boutte for pay periods prior to December 2012 in the approximate aggregate amount of $54,040 and excludes obligations to Frontier under the Management Agreement

**Debtors' Motion for an Order Authorizing Payment
Of Prepetition Claims of Independent Contractors**  Page 2 of 12

to the Independent Contractors and so that their reasonable expectations of compensation for services will be met. As such, the Hospital seeks to continue paying Prepetition Independent Contractor Obligations in the ordinary course and to direct the bank at which the Debtors maintain accounts used to pay such obligations to receive, process, honor and pay all checks, drafts, wires, or automated clearing house transfers issued on account of the Prepetition Independent Contractor Obligations, provided sufficient funds are available to honor all such payments, without regard to when the applicable check was issued.

4. The relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors. A failure by the Debtors to honor their prepetition obligations to their Independent Contractors may result in the loss by the Debtors of a critical portion of their medical staff at a time when they need it most. The Debtors believe that the compensation paid to the hospital's Independent Contractors comprises an important source of their regular income without which they may suffer immediate adverse consequences. Further, the Debtors believe that these Independent Contractors may cease to provide their services to the hospital, and seek employment elsewhere, if their reasonable expectations of compensation for services rendered on behalf of the Debtors are not met. The loss of even one of the Independent Contractors would be detrimental to the Debtors' operations. Consequently, it is essential to the Debtors' continued operations that the Debtors' Independent Contractors receive assurance that they will receive all prepetition compensation.

## PROCEDURAL BACKGROUND

5. On December 17, 2012 (the "<u>Petition Date</u>") the Debtors filed voluntary petitions for relief in this Court under chapter 11 of the Bankruptcy Code.

6. The Debtors have filed a Motion for Joint Administration of their Chapter 11 cases.

---

except as specifically requested in this Motion. The Debtors reserve their right to request authorization to pay such excluded amounts at a later time.

7. The Debtors continue to manage and operate their business as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

8. No creditors' committee has been appointed in these cases by the United States Trustee. Further, no trustee or examiner has been requested or appointed in the Debtors' chapter 11 cases.

## FACTUAL BACKGROUND

9. The Hospital operates a twenty-five (25) bed Medicare certified Critical Access Hospital and Rural Health Clinic in Winnie, Texas. Frontier is the majority equity holder of the Hospital and serves as the hospital manager. Both of the Debtors' business offices are located in Fort Worth, Texas. Winnie is a small community located approximately twenty (20) miles southeast of Beaumont and approximately twenty-five (25) miles to the east of Baytown. Located near the Gulf Coast, it is the only access to healthcare for persons living near the coast and around the Bolivar Peninsula. For this community, the next closest hospital is more than thirty (30) miles away.

10. The Hospital provides healthcare to an estimated population of 40,000 in a medically underserved area which includes Chambers, West Jefferson, Liberty and Galveston counties. The Hospital provides a wide range of healthcare services, including twenty-four (24) hour emergency care, in-patient care and various out-patient services. Laboratory, radiology and pharmaceutical services are also provided, as well as many specialty services including pediatrics, family practice, cardiology, physical therapy and ophthalmology.

11. Behind the local school district, the Hospital is the second largest employer in the community. The financial profile of the Hospital is set forth below:

- Annual gross revenue – $15.0 million
- Annual gross payroll – $3.66 million
- Annual net payroll – $2.864 million

- Full Time Equivalents ("FTEs") - 63
- Employee positions/Mid-level practitioners – 10
- Emergency room visits – 2,513
- Annual in-patient service days - 1,614
- Annual out-patient visits – 2,583
- Annual out-patient clinic visits – 17,694

12. The Hospital is fortunate to not only have the support of the community and its residents, but also the support of two local organizations that were recently created to help support the Hospital financially. The Winnie Coastal Medical Foundation (the "Foundation") is a non-profit organization led by key community leaders, and which was created to support the efficient delivery of healthcare services in the region. Winnie-Stowell Hospital District (the "Hospital District") is a sales tax based governmental entity that was also created to help ensure the availability of healthcare services to both indigent patients and all other constituents served by the Hospital.

13. This support is crucial because the Hospital, as part of its service to the community, is required to accept and treat patients through its emergency room regardless of any patient's ability to pay. Consequently, because the Hospital is required to serve the community without regard to ability of patients to actually pay for the services, community support by both the Foundation and Hospital District is essential to the continued success of the Hospital and the performance of its mission in the community.

14. The Hospital, the Winnie-Stowell EMS and the Arboretum Nursing Home are currently the only available healthcare entities in the community. The existence and success of the Hospital is crucial not only to the people of the community but also to the other two healthcare entities because the next closest hospital is more than thirty (30) miles away. The Arboretum Nursing Home is a one hundred (100) bed facility treating primarily Medicare patients

that are often in need of immediate medical attention. They depend on the Hospital to provide both initial emergency and primary care for this aged portion of the community. If the Hospital were to cease operations, the Winnie-Stowell EMS would have to travel more than thirty (30) miles out of the area to transport patients which, during its absence, would leave the community effectively without any emergency services. Studies have shown that the first fifteen (15) minutes are crucial to a person's survival or quality of life in an emergency situation such as cardiac arrest or other life threatening injuries. As mentioned above, as to the people residing in the beach community on the Bolivar Peninsula, they would have to travel up to an hour to receive healthcare other than from the Hospital.

15. In addition, as reflected above, the Hospital has ten (10) physicians and nurse practitioners. If the Hospital ceases to operate, the doctors and physician's assistants employed by, and practicing at, the Hospital would not have any physical facilities from which to provide healthcare services in the Winnie area. There are no other healthcare facilities within the Winnie community and, absent the operation of the Hospital, such practitioners would be forced to relocate in either Beaumont or Baytown. The net result would be that the Winnie community would lose its local base of healthcare providers simply because there are no facilities from which they could practice.

16. The Hospital is also an integral part of the economy of the area. The residents of Chambers County and the surrounding counties face significant challenges as an economically distressed region. According to the Chambers County Community Health Assessment conducted by the Texas Department of Health and Human Services, and an assessment summary provided by the Federal Emergency Management Agency in 2009, not only does Chambers County suffer from general economic hardship, but also reported a decline in the number of physicians, physician's assistants and registered nurses from 1998 to 2007 (per population). The area is still considered to be under recovery efforts from Hurricane Ike in 2009

and Hurricane Rita in 2005. Both storms caused significant damage to residences and businesses in the area. The Hospital suffered extensive damage and ceased operations for an extended period of time. This has been a substantial factor in the current financial situation, which is a classic example of a distressed area with increased needs for healthcare services having decreasing resources to pay for and provide these services.

## RELIEF REQUESTED

17. By this Motion, the Debtors seek authority, pursuant to section 105(a) of the Bankruptcy Code, to pay outstanding Prepetition Independent Contractor Obligations, and to direct the bank at which the Debtors maintain their accounts used for such purpose to receive, process, honor and pay all checks, drafts, wires, or automated clearing house transfers issued or made on account of the Prepetition Independent Contractor Obligations, provided sufficient funds are available to honor all such payments, without regard to when the applicable check was issued.

## THE DEBTORS' PREPETITION CONTRACT LABOR OBLIGATIONS

18. The Debtors compensate their Independent Contractors pursuant to the following arrangements:

(a) <u>Individual Independent Contractors</u>. Most of the Independent Contractors are retained in their individual capacity by the Hospital. The portion of Prepetition Independent Contractor Obligations attributable to these individuals is estimated to be $12,431.

(b) <u>PSA Independent Contractors</u>. The Hospital retains a physician and physician's assistant as independent contractors pursuant to a Professional Services Agreement (the "<u>PSA</u>") with Thompson Outpatient Clinic (the "<u>Provider</u>"). Professional Services Agreements are common in the medical field and allow physicians practicing as a group to provide their services as independent contractors to a hospital. Here, the

Provider services relate primarily to the Hospital's Rural Health Clinic. Pursuant to the PSA, the Hospital is obligated to pay the Provider $22,000 on the 22nd of each month, as an estimate for monthly services rendered or to be rendered. The amount of any underpayment is paid on the 7th of the following month, and any overpayments are credited against the next monthly charge. As of the Petition Date, $4,997 was owed to the Provider for services rendered prior to December 2012, and an estimated $22,000 is due and payable on December 22 for the current month.

(c) <u>Manager Independent Contractor</u>. Pursuant to a Management Agreement between Frontier and the Hospital, Frontier serves as the hospital's manager, responsible for managing the daily operations of the hospital. Under the Management Agreement, the Hospital is obligated to pay Frontier an annual management fee of at least $684,375. Albert B. Schwarz is the sole managing member of Frontier, and in such capacity, is entitled to compensation from Frontier, consisting of a salary of $14,000 per month, plus allowances for housing (average $1,050 per month), car ($650 per month), phone ($150 per month) and health insurance ($750 per month). Mr. Schwarzer travels on a routine basis between Fort Worth and Winnie on hospital business, and maintains an apartment and car in Houston for such purpose. The Debtors consider this to be a cost-savings measure, as the expense for frequent overnight stays and rental cars would far exceed the monthly allowance provided to Mr. Schwarzer. Historically, the Hospital has paid Mr. Schwarzer's salary and business expenses directly as a part of the management fee owed to Frontier. For the purposes of this Motion, and without waiving their right to subsequently request additional relief from the Court, the Debtors request authority to pay Mr. Schwarzer's current salary, allowances and expenses of $3,000, $775, and $3,500, respectively, as a partial payment to the Manager Independent Contractor.

19. As indicated above, because of regulatory concerns, the Debtors' (as non-physicians) are not able to employ the contract physicians as regular employees. Nevertheless, the number of hours worked by contract physicians and other Independent Contractors, and the amount due to them as compensation for their services, is generated internally by the Debtors' computer system. In addition, these Independent Contractors are paid on the same dates as the Debtors' regular employees – i.e., on the 22nd of every month, for time incurred from the 1st to the 15th of the month, and on the 7th, for time incurred from the 16th to the end of the prior month.

20. As with the Debtors' employees, the Debtors' Independent Contractors similarly rely on the Debtors to compensate them for their services. The Debtors believe that, if the Independent Contractors are not paid for their prepetition services, they may cease to provide services to the Debtors' patients. Without the continued services of these Independent Contractors, the Debtors' would not be able to continue to provide their current level of services and patient care. Consequently, it is imperative to the Debtors' continued operations that these Independent Contractors continue to provide their professional services to the Debtors' patients.

21. Accordingly, the Debtors seek authorization to pay the Prepetition Independent Contractor Obligations to their Independent Contractors. The Debtors additionally requests authority to pay the Independent Contractors for any prepetition expenses that are customarily reimbursed in connection with their services for the Hospital. The Debtors do not believe any such prepetition expenses will exceed $1,000 in the aggregate.

## BASIS FOR RELIEF

22. The Debtors believe it is in the best interests of the Debtors' other unsecured creditors to pay the prepetition amounts owed to the Debtors' Independent Contractors. These individuals are critical to the Debtors' continued operations. Without these individuals, the Debtors' hospital would not be able to continue to provide its current level of services and

patient care. Because the continued services of these individuals are critical to the Debtors' continued operations, the Debtors believe that payment of these prepetition amounts will benefit, rather than prejudice, the Debtors' other unsecured creditors. Further, the Debtors do not believe that payment of these prepetition amounts will materially affect the Debtors' bankruptcy estates.

23. Under section 105(a) of the Bankruptcy Code, courts have permitted postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *In re Tusa-Expo Holdings, Inc.*, 2008 Bankr. LEXIS 2852, *6-11 (Bankr. N.D. Tex. 2008); *In re CoServ, L.L.C.*, 273 B.R. 487, 497 n. 17 (Bankr. N.D.Tex. 2002); see also, *In re Gulf Air, Inc.*, 112 B.R. 152 (Bankr. W.D.La. 1989).

24. The Debtors' Independent Contractors are essential to a successful bankruptcy. Many of these individuals rely on receiving their full compensation to pay their daily living expenses. As a result, these individuals could be exposed to significant financial hardship if the Debtors are not permitted to honor the unpaid Prepetition Independent Contractor Obligations.

25. To give effect to the requested relief, the Debtors request that the Court provide specific authorization and direction to the bank at which the Debtors maintain their accounts used to pay the Prepetition Independent Contractor Obligations to receive, process, honor and pay all checks, drafts, wires, or automated clearing house transfers made on account of the Prepetition Independent Contractor Obligations, provided sufficient funds are available to honor all such payments, without regard to when the applicable check was issued.

26. The Debtors submit that the total amount to be paid for the benefit of their Independent Contractors if the requested relief is granted is *de minimis* compared with the importance and necessity of the Independent Contractors to the Debtors' continued operations. Accordingly, the relief sought herein is in the best interests of the Debtors' estates and creditors and will allow the Debtors to continue to operate their business with minimal disruption and

proceed with the important task of stabilizing their operations.

## LIMITED NOTICE

27. Notice of this Motion has been provided to (a) Coon Bayou Farm, LLC; (b) the Internal Revenue Service; (c) the office of the United States Trustee for the Northern District of Texas; (d) the holders of the twenty (20) largest unsecured claims against the Debtors; and (e) parties filing a notice of appearance herein; as all set forth below in the Certificate of Service. The Debtors submit that no other further notice need be provided.

## CONCLUSION

WHEREFORE, the Debtors respectfully request entry of an order substantially in the form of **Exhibit "A"** attached hereto granting (i) the relief requested herein and (ii) such other and further relief as is just and proper.

Dated: December 17, 2012

Respectfully submitted,

/s/ J. Robert Forshey
J. Robert Forshey
State Bar No. 07264200
Lynda L. Lankford
State Bar No. 11935020
Suzanne K. Rosen
State Bar No. 00798518
FORSHEY & PROSTOK, LLP
777 Main Street, Suite 1290
Fort Worth, Texas 76102
Phone: (817) 877-8855
Fax: (817) 877-4151

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon the parties listed on the attached service list via United States Mail, first class postage prepaid, or via ECF electronic Notice, if available, on December 17, 2012.

/s/ Lynda L. Lankford

L:\BFORSHEY\Frontier Healthcare Group (C11) #5586\Pleadings\Motion to Pay Prepetition Contract Labor Obligations 12.17.12.doc

*Winnie Community Hospital*
*Frontier Healthcare Group*
*Service List*
*#5586*

Winnie Community Hospital, L.L.C.
Frontier Healthcare Group, L.L.C.
Albert B. Schwarzer
3221 Collinsworth St., Suite 200
Fort Worth, TX 76107

Office of the U.S. Trustee
1100 Commerce St., Room 976
Dallas, TX 75242-1011

Admiral Linen and Uniform Services
2030 Kipling
Houston, TX 77098

Air Gas-Gulf States Region
PO Box 676031
Dallas, TX 75267

Alere North America Inc.
PO Box 846153
Boston, MA 22846

Cardinal Health, Inc.
c/o Bank of America Lock Box 15898
Collections Center Dr.
Chicago, IL 60693

Dr. Grigoriy Rodonaia
2955 Harrison, Suite 200
Beaumont, TX 77702

Dr. Nedrana Boutte
1178 2nd St.
Winnie, TX 77665

Endeavor Healthcare
28 Hunters Point
New Brunsfels, TX 78132

Entergy
PO Box 8104
Baton Rouge, LA 70891-8104

Frontier Healthcare Group, Inc.
3901 W. Vickery Blvd., Suite 4
Fort Worth, TX 76107-5672

Healthland
Dept Ch 17945
Palatine, IL 60055-7945

Jesser and Farber, L.L.P.
One Financial Place
440 South LaSalle St., Suite 2950
Chicago, IL 60605-5018

Laboratory Corp of America
PO Box 12140
Burlington, NC 27216-2140

Med Force Inc.
6220 Westpark, Suite 220
Houston, TX 77057

O'Connell Robertson & Assoc.
811 Barton Springs Rd., Suite 900
Austin, TX 78704

Physician Sales & Services, Inc.
PO Box 846260
Dallas, TX 75284-6260

Relayhealth
PO Box 403421
Atlanta, GA 30384-3421

Roche Diagnostics Corp.
Mail Code 5021
PO Box 660367
Dallas, TX 75266-0367

Siemens Healthcare Diagnostics
PO Box 121102
Dallas, TX 75312-1102

Thompson Outpatient Clinic
538 Broadway
Winnie, TX 77665

Windstream
Attn: Edith Staton
1720 Galleria
Charlotte, NC 28270

Internal Revenue Service
MC 8420G
PO Box 145595
Cincinnati, OH 45250-5595

Internal Revenue Service
MC 5035DAL
1100 Commerce St.
Dallas, TX 75242-1198

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Office of the Attorney General
Main Justice Building, Room 5111
10th & Constitution Avenue, N.W.
Washington, DC 20530

Texas Attorney General
Texas State Dispursement Bldg.
PO Box 659791
San Antonio, TX 78224-9941

U.S. Attorney's Office
1100 Commerce St., 3rd Floor
Dallas TX 75242

U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

Coon Bayou Farms, LLC
4909 Crestwood Dr.
Little Rock, AR 72207

CIT Finance LLC
1 CIT Dr.
Livingston, NJ 07039

Sarah and Bryan Mayo
222 Lamont Ave.
San Antonio, TX 78209

Marjorie G. Scott Family Trust
PO Box 98
Tillar, AR 71670

Vernon W. Scott Revocable Trust
4909 Crestwood Dr.
Little Rock, AR 72207

Sumner Group
2121 Hampton Ave.
St. Louis, MO 63139-2904

Roxy Odom
11 Carriage Hills
San Antonio, TX 78257

Rural Health Advocates
4127 Hunters Hill Rd.
Norman, OK 73072

AT&T
PO Box 5001
Carol, TX 60197

Charter Business
PO Box 790261
St. Louis, MO 63179

Collinsworth Building Joint Venture
3221 Collinsworth St., Suite 100
Fort Worth, TX 76107

Datamax
PO Box 2222
St. Louis, MO 63102-2222

Duane Henry
17 Calle Cascabella
Santa Fe, NM 87508

Gunnar Erickson
9902 Crystal Court, Suite 107
Laredo, TX 78045-6379

Jackie Leonard
29729 S. Mellow Wind
San Antonio, TX 78015

Rosemary Mede
97 Highland Ave.
Warwick, RI 28860

# EXHIBIT "A"

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| IN RE: ) | CHAPTER 11 CASES |
| ) | |
| WINNIE COMMUNITY HOSPITAL, L.L.C., ) | CASE NO. 12-46841-dml-11 |
| FRONTIER HEALTHCARE GROUP, L.L.C., ) | CASE NO. 12-46842-rfn-11 |
| ) | |
| DEBTORS. ) | **Jointly Administered Under** |
| ) | **Case No. 12-46841-dml-11** |

**ORDER GRANTING DEBTORS' MOTION FOR AN ORDER AUTHORIZING
PAYMENT OF PREPETITION CLAIMS OF INDEPENDENT CONTRACTORS**

Came on for consideration the *Debtors' Motion for an Order Authorizing Payment of Prepetition Claims of Independent Contractors* [Docket No. ___] (the "Motion")[1] filed by Debtors Winnie Community Hospital, L.L.C. ("Hospital") and Frontier Healthcare Group, L.L.C. ("Frontier" and with Hospital, the "Debtors"); and it appearing that the Court has jurisdiction over this matter; and it appearing that due notice of the Motion has been provided as set forth in the Motion, and that no other or further notice need be provided; and it appearing that venue is proper before this Court pursuant to 28 U.S.C. sections 1408 and 1409; and having reviewed

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

**Order Granting Debtors' Motion For An Order Authorizing
Payment Of Prepetition Claims Of Independent Contractors** **Page 1**

the Motion and having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court, and after due deliberation and sufficient cause appearing therefor, the Court hereby finds that the Motion should be granted.

ACCORDINGLY, it is hereby ORDERED that:

1. The Motion is GRANTED;

2. The Debtors are authorized, but are not directed, to pay or otherwise honor the Prepetition Independent Contractor Obligations to or for the benefit of the Independent Contractors as provided in the Motion;

3. The Debtors are authorized to pay up to an aggregate of $1,000 to reimburse expenses incurred by one or more Independent Contractors for expenses that are customarily reimbursed in connection with such Independent Contractors' services to the hospital;

4. The banks and financial institutions upon which any checks are drawn or electronic transfers are made in payment of the obligations authorized herein, either before, on or after the Petition Date, are hereby authorized and director to honor, upon presentation, any such checks or transfers, provided that sufficient funds are available in the applicable accounts to make such payments;

5. The Banks shall be entitled to rely on the Debtors' express instructions to the Banks regarding which of the amounts referenced in the preceding paragraph have been authorized by the Court to be paid, and no liability shall be imposed on the banks as a consequence of such reliance;

6. Any third party receiving payment from the Debtors is authorized and directed to rely upon the representations of the Debtors as to which payments are authorized by this Order;

7. All payments authorized pursuant to this Order shall be made pursuant to, and in compliance with, the terms of any cash collateral or debtor-in-possession financing order of this Court;

8. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion;

9. Nothing in this Order shall prejudice the Debtors' right to seek additional and further relief from this Court concerning Prepetition Independent Contractor Obligations;

10. Neither the Motion, the provisions of this Order, nor any payments made or not made by the Debtors pursuant to this Order, shall be deemed an assumption or rejection of any contract or otherwise affect the Debtors' rights under § 365 of the Bankruptcy Code to assume or reject any executory contract between a Debtor and any other party;

11. Notwithstanding the relief granted herein or in any actions taken hereunder, nothing contained in this Order shall create any rights in favor of, or enhance the status of any claim held by, any Independent Contractor. The authorizations granted herein are permissive and not obligatory, and the Debtors may, in the exercise of their discretion, determine whether or not to make any of the payments authorized hereunder; and

12. This Court shall, and hereby does, retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

###End of Order###

L:\BFORSHEY\Frontier Healthcare Group (C11) #5586\Pleadings\Order Granting Independent Contractor Motion 12.17.12.docx